```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOHN SMITH,

                        Plaintiff,
v.                                                          **MEMORANDUM**
                                                            **OPINION AND ORDER**
UNITED STATES DEPARTMENT OF
JUSTICE, et al.,                                            18-CV-03371 (PMH)

                        Defendants.
---------------------------------------------------------X
```

PHILIP M. HALPERN, United States District Judge:

Plaintiff John Smith ("Plaintiff"),[1] a prisoner proceeding *pro se* and *in forma pauperis*, brings claims under the Federal Tort Claims Act and 42 U.S.C. § 1983 against EMT-P Mr. M. Yonnone (BOP Employee) ("Yonnone"), PA-C Daniel Tarallo (BOP) Employee ("Tarallo"), Dr. Diane Sommer (BOP Employee) ("Sommer," and collectively, the "Individual Defendants"), and the United States[2] for allegedly inadequate medical care he received while incarcerated at the Federal Correctional Institute ("FCI") Otisville. (Doc. 2, "Compl.").[3]

The Individual Defendants served a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and for summary judgment under Federal Rule of Civil Procedure 56 on December 17, 2018.[4] On December 27, 2018, Standing Order M10-468 was issued by Chief Judge McMahon, staying all civil cases in which the United States Attorney's Office had appeared as

---

[1] This is an alias. On April 27, 2018, Chief Judge McMahon granted Plaintiff's application to proceed in this action as "John Smith." (Doc. 7).

[2] The United States did not join the instant motion to dismiss. Pursuant to a Sealed Order dated October 31, 2018 issued by Judge Román, the time for the United States to answer the Complaint is stayed pending resolution of the Individual Defendants' motion. (Doc. 19).

[3] Citations to the Complaint, which was filed under seal, correspond to the pagination generated by ECF.

[4] The October 31, 2018 Order required that the motion papers be served, but not filed until the reply date. (Doc. 19).

counsel of record for the United States, its agencies, and/or it employees until the business day after a budget appropriation restoring Department of Justice funding was signed into law. (Doc. 25). On April 3, 2020, this case was reassigned to this Court. On April 10, 2020, as there had been no activity on the docket for more than one year, the Court issued an Order directing the parties to submit a letter concerning the status of the action. (Doc. 27). On July 29, 2020, the Court endorsed a status letter from the parties setting a briefing schedule for Plaintiff's opposition to the motion and the Individual Defendants' reply papers. (Doc. 34). On September 28, 2020, Plaintiff filed his opposition papers. (Docs. 37-39). On November 2, 2020, the Individual Defendants filed both their moving papers and reply memorandum of law. (Docs. 42-48).

For the reasons set forth below, the Individual Defendants' motion to dismiss and for summary judgment pursuant to Rules 12(b)(6) and 56(a) is GRANTED.

## BACKGROUND

The facts recited herein are drawn from the Complaint and the documents annexed thereto, which include: Plaintiff's medical records; the Individual Defendants' Local Civil Rule 56.1 Statement (Doc. 46, "Def. 56.1 Stmt."); the supporting Declaration of Adam Johnson, a Supervisory Attorney with the Federal Bureau of Prisons ("BOP") (Doc. 45, "Johnson Decl."), and the exhibits annexed thereto, which include, *inter alia*: the results of a search of Plaintiff's administrative grievance history as of September 11, 2018 (Doc. 45-1, "Johnson Ex. 1"); Plaintiff's response to the Individual Defendants' Local Civil Rule 56.1 Statement (Doc. 37, "Pl. 56.1 Opp."); and the documents annexed to Plaintiff's memorandum of law in opposition (Doc. 39, "Pl. Opp."), which include a progress report from the BOP.[5] Plaintiff alleges that he was struck in the hand by a basketball while working at his prison job assignment as a recreation orderly; and, experiencing

---
[5] For ease of reference, citations to the documents referenced herein correspond to the pagination generated by ECF.

right wrist pain as a result, went to the FCI Otisville Health Clinic ("BOP Health Services") on June 14, 2014. (Compl. at 5, 15, 27; Pl. Opp. at 12). Plaintiff was seen by Yonnone, who observed some swelling and "pain to palpation" of the wrist area, but otherwise noted no deformity. (Compl. at 15, 27). Yonnone gave Plaintiff a wrist brace, directed him to ice his wrist, and ordered X-ray imaging to rule out a fracture. (*Id*. at 27, 29). The resulting X-rays were normal except for a finding of "scapholunate interval upper limit." (*Id*. at 15, 33, 45). Tarallo reviewed and co-signed the treatment note. (*Id*. at 31).

On August 7, 2014, Tarallo examined Plaintiff at BOP Health Services regarding several health concerns, including Plaintiff's continuing right wrist pain. (*Id*. at 33). Tarallo observed "a full range of motion" of the right wrist. (*Id*. at 35). Tarallo submitted a consultation request for Plaintiff to be examined by an orthopedic surgeon and advised Plaintiff to continue taking his prescribed pain medication, wearing a wrist brace, and limiting strenuous use of his right wrist. (*Id*. at 37). An MRI of Plaintiff's right wrist was taken on September 30, 2014; the resulting report states that there was "no evidence of scapholunate ligament tear." (*Id*. at 41).

On October 1, 2014, Plaintiff was examined at BOP Health Services, concerning several health issues. (*Id*. at 43). The record of the examination notes that Plaintiff had a wrist brace that he wore inconsistently. (*Id*.). The examination was positive for wrist tenderness, but negative for joint swelling or crepitus. (*Id*. at 47). The record indicates that Sommer subsequently referred Plaintiff to a specialist, Dr. Sodha, and that on May 14, 2015, Plaintiff presented to Crystal Run Healthcare for his right wrist pain and a surgical consultation with Dr. Sodha. (*Id*. at 17, 51). Dr. Sodha performed X-ray imaging which showed "chronic scapholunate ligament tear" in the right wrist. (*Id*. at 51). Dr. Sodha and Plaintiff "discussed in detail the different options, both operative and non-operative" and decided to proceed with "carpal bone stabilization, flexor carpii [sic]

3

radialis tendon transfer, wrist dennervation [sic]." (*Id*. at 17, 51). Plaintiff was seen at BOP Health Services the following day, and the medical notes indicate that Plaintiff was to be referred for surgery. (*Id*. at 55).

Plaintiff's surgery was performed on August 3, 2015. (*Id*. at 73). Plaintiff alleges that Dr. Sodha informed him that because of the purported delayed treatment of his injury, future surgeries may be required. (*Id*. at 5, 67, 73). Dr. Sodha's notes indicate that Plaintiff understood "that full restoration of function of the wrist may not be possible." (*Id*. at 73). Plaintiff was seen at BOP Health Services for a post-operative evaluation on August 3, 2015. (*Id*. at 57). He was seen again at BOP Health Services the following day on August 4, 2015. (*Id*. at 77, 79).

On February 4, 2016, Plaintiff had a follow-up with Dr. Sodha, who noted that Plaintiff was "[d]oing well" despite "some pains with certain movements." (*Id*. at 83). X-ray imaging taken that day showed widened scapholunate joint space, which appeared greater than the comparison X-ray images taken on September 24, 2015, indicating a "tear to the associated ligament." (*Id*. at 87).

Plaintiff was examined by Dr. Sodha again on July 7, 2016. (*Id*. at 89). The medical notes indicate that X-rays revealed post-traumatic degenerative joint disease in the wrist, and that Plaintiff was proceeding with a cortisone injection, although "salvage procedures" might become necessary if the pain continued. (*Id*. at 93). Plaintiff had another MRI performed on November 17, 2016 which revealed a tear of the scapholunate ligament. (*Id*. at 97). On March 9, 2017, Plaintiff and Dr. Sodha discussed the option of a midcarpal fusion and Plaintiff decided to proceed with a second surgery. (*Id*. at 105). Plaintiff alleges that unnamed prison officials deliberately ignored Dr. Sodha's instruction for a second surgery and instead, in violation of the Eighth Amendment, deliberately transferred Plaintiff to another facility across the country. (*Id*. at 17).

## STANDARD OF REVIEW

I.      Motion to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II.   Motion for Summary Judgment Under Rule 56

Under Rule 56, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). "Although summary judgment is generally not appropriate until after some discovery has occurred in a case, . . . a motion for summary judgment in lieu of an answer is appropriate where the facts are undisputed and no amount of discovery would change the outcome." *Green v. Harris*, 309 F. Supp. 3d 10, 12 (W.D.N.Y. 2018) (internal citations omitted); *see also Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 202 (2d Cir. 2003) (procedurally proper to move for summary judgment in lieu of an answer); *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 190 (S.D.N.Y. 2010) (same); *Cover v. Am. Postal Workers Union, AFL-CIO*, No. 05-CV-2430, 2006 WL 8441397, at *4 (S.D.N.Y. July 21, 2006) (same), *aff'd*, 357 F. App'x 336 (2d Cir. 2009).

Rule 56 directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). A court's duty in determining whether summary judgment is appropriate is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). The task is material issue spotting, not material issue determining. Therefore, "where there is an

absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial and cannot defeat a motion for summary judgment." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). The claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)). Should there be no genuine issue of material fact, the movant must also establish its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate

only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (summary judgment is appropriate when "the law so favors the moving party that entry of judgment . . . is proper").

With respect to its analysis under both Rules 12(b)(6) and 56, the Court is mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-7186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). This status, however, does not excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-4837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Ross v. Koenigsmann*, No. 14-CV-1321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017) (explaining that, even for a *pro se* party, "mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment"). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-2630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020).

The multiple branches of this motion, one to dismiss the Complaint and one to grant summary judgment on the yet-to-be-pled affirmative defense of exhaustion of administrative remedies, is entirely appropriate where, as here, documents concerning events outside of the allegations in the Complaint must be considered. The affirmative defense of failure to exhaust

administrative remedies under the PLRA is more properly raised on summary judgment where, as here, the Complaint does not address the issue in any meaningful fashion. Without the summary judgment branch of the motion, the exhaustion issue could not be adjudicated on this Complaint because it lacks meaningful reference thereto. *See Correa v. Lynch*, No. 20-CV-02875, 2021 WL 2036697, at *4-5 (S.D.N.Y. May 20, 2021).

The Court will turn to the dispositive affirmative defense of failure to exhaust administrative remedies first and before considering Plaintiff's claim for deliberate indifference.

## ANALYSIS

I. <u>Prison Litigation Reform Act ("PLRA") Exhaustion</u>

The Individual Defendants contend that they are entitled to summary judgment under Rule 56 because Plaintiff failed to exhaust his administrative remedies under the PLRA. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted). When a prisoner is in a state-run prison, courts are required to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). However, when a prisoner is in a federal prison—as is the case here—the BOP's grievance process must be followed. *See Johnpoll v. Thornburgh*, 898 F.2d 849, 850 (2d Cir. 1990) ("The Bureau of Prisons has established administrative remedy procedures by which a federal inmate may seek formal review of a complaint which relates to any aspect of his imprisonment. . . . A federal

9

prisoner . . . is not generally exempt from exhausting federal administrative remedies." (internal citations and quotation marks omitted)); *see also Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (holding that a federal inmate "had to comply with the BOP's . . . administrative grievance system for prisoner complaints").

Here, Plaintiff—"[a]n inmate in BOP custody"—was required to "exhaust a four-step administrative process," which *Gottesfeld v. Anderson* details:

> First, the inmate must present his or her complaint to a staff member on a BP-8 form. If the issue is not resolved, the inmate must then submit an Administrative Remedy Request—on a BP-9 form—to the Warden within 20 calendar days of the incident that triggered the complaint. Where the inmate is not satisfied with the Warden's response, the inmate must submit an appeal to BOP's Regional Director on a BP-10 form, and must do so within 20 calendar days of the Warden's response. Where the inmate is not satisfied with the Regional Director's response, the inmate must file a Central Office Administrative Remedy Appeal on a BP-11 form with the BOP's General Counsel, and must do so within 30 calendar days of the Regional Director's response.

No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020). There are three circumstances, however, in which a BOP inmate's failure to exhaust this four-step process is excusable because relief is deemed "unavailable":

> First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

*Williams*, 829 F.3d at 123-24 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016)).

Plaintiff alleges in the Complaint that he grieved or appealed the subject claim (*id*. at 14, 21), specifying the denial of "Administrative Claim # TRT-NER-2017-04313" and referring the

10

Court to an exhibit annexed to the Complaint (*id*.). The exhibit referenced is a letter from the BOP, dated October 27, 2017, advising Plaintiff that his claim for personal injury under the Federal Tort Claims Act ("FTCA") was denied. (*Id*. at 25). In other words, Plaintiff's referenced exhibit is not applicable to the *Bivens* claims that are the subject of this motion; the administrative prerequisites for FTCA claims are different from the claims at issue on this motion. *See Accolla v. United States Gov't*, 668 F. Supp. 2d 571 (S.D.N.Y. 2009) (distinguishing Form SF-95, which is required for FTCA claims, and the BP-9, which is required for *Bivens* claims).

Plaintiff, in his opposition, does not argue that his administrative claim exhausted his administrative remedies for his *Bivens* claims against the Individual Defendants. (*See* Pl. Opp. at 6-7). Rather, concerning exhaustion of administrative remedies for his *Bivens* claims, Plaintiff admits that he submitted two grievances concerning medical care and that neither grievance was pursued beyond the first step of the administrative grievance system. (Def. 56.1 Stmt. ¶ 7; Pl. 56.1 Opp. at 3, ¶ 7 ("Plaintiff agrees . . . that neither medical grievance went beyond the first step (BP-9)")). Plaintiff argues that although he failed to exhaust administrative remedies, such a remedy was unavailable to him because the filing deadline had expired by the time he first became aware of the allegedly inadequate medical care at issue. (Pl. Opp. at 6-7).

Inmates are permitted to pursue otherwise untimely grievances if there is "a valid reason for delay." 28 C.F.R. § 542.15(a). Instead of filing a grievance and exhausting his remedies after he became aware of the allegedly inadequate medical care, Plaintiff unilaterally determined that the time to file had passed and thus elected to forego the grievance process altogether. Plaintiff's decision not to utilize the four-step process available to him "is insufficient to negate the PLRA's exhaustion requirement." *Mena v. City of New York*, No. 12-CV-0028, 2014 WL 2968513, at *6 (S.D.N.Y. June 27, 2014) (internal quotation marks and alteration omitted). Simply put, futility is

not established by an inmate's subjective belief that his administrative complaint might be denied. *Id.*; *see also Indelicato v. Suarez*, 207 F. Supp. 2d 216, 220 n.3 (S.D.N.Y. 2002) (The "alleged ineffectiveness of the administrative remedies that are available, however, does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so.").

Plaintiff argues further that certain differences between the administrative process described in the Code of Federal Regulations and the FCI Otisville orientation materials that Plaintiff received upon his arrival at the facility were so confusing that they caused the process to be incapable of use. (Def. 56.1 Stmt. ¶¶ 2-6; Pl. 56.1 Opp. at 1-2, ¶¶ 2-6). The alleged departures and/or deficiencies cited by Plaintiff simply do not render the administrative process so "opaque that it becomes, practically speaking, incapable of use." *Williams*, 829 F.3d at 123-24. Moreover, it is undisputed that plaintiff filed at least eighteen administrative claims while incarcerated, including while housed at FCI Otisville.[6] This undisputed fact undercuts any argument by Plaintiff that the process was not described clearly enough in the inmate orientation manual issued to him. (Pl. 56.1 Opp. at 2, ¶¶ 5, 6). Accordingly, Plaintiff's Complaint against the Individual Defendants is dismissed for failure to exhaust administrative remedies.[7]

---

[6] The documents submitted by the Individual Defendants show that Plaintiff grieved twenty-seven issues through the BOP's administrative grievance system (Johnson Ex. 1), nine of which he grieved while housed at FCI Otisville (Johnson Decl. ¶ 5). Plaintiff disputes the number of grievances he filed, maintaining that he grieved fourteen issues "during his period of incarceration to the filing date of the action" and grieved four issues while housed at FCI Otisville. (Pl. 56.1 Opp. at 2-3, ¶ 7). The exact number of grievances filed is immaterial to the determination herein.

[7] Given the Court's conclusion, no ruling is necessary on the Individual Defendants' second unpled defense of qualified immunity.

II. Plaintiff's Claim for Deliberate Indifference to His Serious Medical Needs

Alternatively, and assuming *arguendo* that Plaintiff exhausted his administrative remedies properly before pursuing this action, Plaintiff's claim of deliberate indifference to his serious medical needs would nevertheless be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff alleges that the Individual Defendants were deliberately indifferent by delaying treatment for his wrist injury, thereby violating his Eighth Amendment rights. (*See* Compl. at 5, 15, 17). Plaintiff alleges also that certain unnamed "Prison Officials" ignored his need for a second surgery and transferred him to another prison facility and away from his hand surgeon. (*See id*. at 17).

The Individual Defendants move to dismiss arguing that the Complaint does not plausibly allege either the objective or subjective components of the deliberate indifference test. (Doc. 43, "Def. Br." at 15-20; Doc. 48, "Def. Reply" at 6-8). They argue further that to the extent Plaintiff claims the transfer before his second surgery is an Eighth Amendment violation, the claim fails to sufficiently allege personal involvement of the Individual Defendants in the transfer decision. (Def. Br. at 20-21). As the Court finds that Plaintiff's allegations do not satisfy either the objective or subject prongs of his deliberate indifference claim, and fails to sufficiently allege the Individual Defendants' personal involvement in the transfer decision, the Court concludes that Plaintiff's Eighth Amendment claim must be dismissed.

Because Plaintiff was an inmate at the time of the alleged misconduct, his claim that jail officials were deliberately indifferent to his medical needs is be analyzed under the Eighth Amendment. *See King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018).[8] "In order to establish an Eighth Amendment claim arising out of inadequate medical care,

---

[8] The record provides no basis for the Court to believe that Plaintiff was a pretrial detainee at the time of

a prisoner must prove 'deliberate indifference to his serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gamble*, 429 U.S. at 104 (brackets omitted)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020).

> The first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain. . . . The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id.* at *4-5 (internal citations and quotation marks omitted). Defendants argue, and the Court agrees, that Plaintiff's allegations do not satisfy either prong.

First, Plaintiff has not alleged a "sufficiently serious" deprivation of medical care. *Id.* at *4. A "sufficiently serious" deprivation results in "more than minor discomfort or injury." *Cain v. Jackson*, No. 05-CV-3914, 2007 WL 2193997, at *5 (S.D.N.Y. July 27, 2007). "To be 'sufficiently serious,' the deprivation must create a 'condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Martin v. Mihalik*, No. 19-CV-7979, 2021 WL 1738458, at *8 (S.D.N.Y. May 3, 2021) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

---

the alleged misconduct. Plaintiff explicitly references the Eighth Amendment in the Complaint (Compl. at 15, 17, 19), the Individual Defendants likewise refer only to the Eighth Amendment (Def. Br. at 15-16), and the documents attached to Plaintiff's opposition reveal that he was sentenced to thirty years imprisonment with five years of supervised release for murder, robbery, burglary, kidnapping and possession of firearms with a projected release date of June 22, 2032. (Pl. Opp. at 11).

14

In this case, the Individual Defendants ordered X-rays and MRIs of Plaintiff's wrist following the injury, and the results of the imaging did not reveal the later-discovered ligament tear, or any other degenerative condition. Rather, Plaintiff's wrist was noted to be without tenderness and with a full range of motion one month after the injury, and "tender" but with full range of motion and no swelling two months after the injury. (Compl. at 15, 29, 33, 35, 41, 45, 47). Plaintiff was monitored by BOP Health Services, provided a wrist brace, and prescribed pain medication. (*Id*. at 27, 37). Plaintiff was referred to an outside hand specialist for care when he later reported continuing pain. (*Id*. at 49, 55). Plaintiff was referred for surgery and had a wrist surgery on August 3, 2015. (*Id*. at 55, 73). After Plaintiff's surgery the hand specialist's notes indicated that Plaintiff was "[d]oing well" despite "some pains with certain movements." (*Id*. at 83).

Given the medical care Plaintiff received at FCI Otisville, the Complaint fails to plead plausibly that the medical treatment was not constitutionally adequate under the circumstances. *See, e.g.*, *Thompson v. Racette*, 519 F. App'x 32, 33-34 (2d Cir. 2013) (objective prong requirement that plaintiff was deprived of adequate medical care was not met where prison medical personnel decided to address torn shoulder ligament with physical therapy instead of surgery which had been recommended by an outside specialist); *Bryant v. Wright*, 451 Fed. App'x 12, 14 (2d Cir. 2011) (no deliberate indifference where the complaint acknowledges that prison doctors were "trying to stop" the medical issue and the plaintiff had received treatment, in light of bare allegation that the treatments had so far been unsuccessful).

Second, Plaintiff does not allege that the Individual Defendants acted with "sufficiently culpable state[s] of mind." *Sutton*, 2020 WL 5504312, at *5. To make a showing on the subjective prong, Plaintiff must prove "that the defendant-official acted intentionally to impose the alleged

condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Plaintiff's submissions reveal just the opposite. According to the medical records Plaintiff submitted, from June 14, 2014 through March 9, 2017, he was examined in connection with his wrist by medical professionals no less than eleven times: five times by the orthopedic surgeon, Dr. Sodha; and six times by BOP Health Services staff, including once by Yonnone and once by Tarallo. (Compl. at 27-108). The BOP Health Services staff also ordered X-rays and MRIs of Plaintiff's wrist; provided him with a wrist brace and prescribed pain medication; referred him to an outside hand specialist for care; and monitored his condition both prior to and following the surgery. (*Id*. at 15, 27, 29, 33, 35, 37, 41, 45, 47, 49, 55).

Initially, and assuming that the interactions between Plaintiff and the Individual Defendants were sufficient to impugn personal involvement in any deprivation of care, the frequency of these visits, and the care provided as a result, belie a showing under the subjective prong. *See Simpson v. Oakes*, 640 F. App'x 86, 88 (2d Cir. 2016) (affirming summary judgment on Eighth Amendment claim where the record reflects "extensive medical care").

Next, the records' contents do not suggest the Individual Defendants' awareness of a serious medical need. *Mena v. City of New York*, No. 13-CV-2792, 2018 WL 4328827, at *7 (E.D.N.Y. Sept. 11, 2018) (granting summary judgment where x-ray "show[ed] no remarkable results" (internal quotation marks omitted)); *see also Abreu v. Farley*, No. 11-CV-6251, 2019 WL 1230778, at *12 (W.D.N.Y. Mar. 15, 2019) (granting summary judgment on Eighth Amendment deliberate indifference for defendants where "medical progress notes wholly undermine[d] Plaintiff's contention that he suffered a sufficiently serious" injury); *Riley v. Roycroft*, No. 16-CV-2227, 2017 WL 782917, at *7 (S.D.N.Y. Feb. 28, 2017) (dismissing Eighth Amendment deliberate

indifference claim where medical notes reflected subjective conclusion that, despite plaintiff's requests, a back brace was unnecessary).

Finally, to the extent Plaintiff seeks to assert a deliberate indifference claim against the Individual Defendants for his transfer to another facility prior to a second surgery, the Complaint does not allege any actions by the Individual Defendants, nor any personal involvement by them in the decision to transfer Plaintiff. Plaintiff does not allege that the Individual Defendants had the authority to order his transfer or that they had any input in the decisional process. Indeed, Plaintiff alleges that the decision to transfer him to another facility was made by unnamed "Prison Officials," which is insufficient to support his claim of a constitutional violation against the Individual Defendants sued herein. *See Correa*, 2021 WL 2036697, at *5 ("Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint 'fatally defective on its face.'" (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987)); *Greene v. Sampson*, No. 18-CV-06103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021) ("a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." (quoting *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017)).

Accordingly, Plaintiff's deliberate indifference claim must be dismissed.

## CONCLUSION

Based upon the foregoing, Defendant's motion for summary judgment and to dismiss the Complaint is GRANTED. The action is dismissed as against the Individual Defendants. The Clerk of the Court is respectfully directed to terminate the pending motion sequence (Doc. 42) and terminate Defendants EMT-P Mr. M. Yonnone (BOP Employee), PA-C Daniel Tarallo (BOP) Employee, and Dr. Diane Sommer (BOP Employee) from this action. The United States shall serve and file its Answer to the Complaint on or before July 9, 2021 in accordance with the Sealed Order dated October 31, 2018. (Doc. 19).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The United States Attorney's Office is directed to serve a copy of this Memorandum Opinion and Order upon Plaintiff and file proof of such service.

**SO ORDERED:**

Dated: White Plains, New York
June 17, 2021

_____
PHILIP M. HALPERN
United States District Judge