UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

JOHN SMITH,

                       Plaintiff,

      -against-                            **OPINION AND ORDER**

MR. M. YONNONE, DANIEL TARALLO, DIANNE     18 Civ. 3371 (JCM)
SOMMER, and THE UNITED STATES OF AMERICA,

                       Defendants.
---------------------------------------------------------------x

       Plaintiff John Smith ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendant the United States of America ("Defendant")[1] for alleged medical malpractice under the Federal Torts Claims Act ("FTCA"), 42 U.S.C. §§ 1346(b), 2401(b), 2671-80. (Docket No. 2). Presently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). (Docket No. 71). The motion is unopposed. For the reasons set forth herein, the Court grants Defendant's motion.[2]

## I. BACKGROUND

### A. Facts

       The following facts are gathered from Defendant's Rule 56.1 statement and the exhibits and affidavits included with Defendant's submissions.[3] The facts are construed in the light most

---

[1] By Memorandum Opinion and Order, dated June 17, 2021, Judge Halpern dismissed Plaintiff's causes of action against Individual Defendants Mr. M. Yonnone, Daniel Tarallo and Dr. Diane Sommer (collectively, the "Individual Defendants"). (Docket No. 50 at 18). The government did not join in the Individual Defendants' motions to dismiss and for summary judgment. (*Id.* at n.2).

[2] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Docket No. 58).

[3] Specifically, Defendant submitted a declaration from Assistant United States Attorney Brandon Cowart. (Docket No. 73) ("Cowart Decl."). Exhibit 1 to the Cowart Declaration is Plaintiff's Complaint. (Docket Nos. 73-1, 86-1).

favorable to Plaintiff as the non-moving party. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). The facts set forth in Defendant's Rule 56.1 statement are not in dispute. *See* Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

Plaintiff is an inmate housed at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"). (Docket No. 72 at 1) ("Def. Mtn." or "Motion"). On June 14, 2014, Plaintiff sought medical treatment for pain in his right wrist after being "struck in [the] hand by [a] basketball earlier" that day. (Cowart Decl., Ex. 2 at 001). Emergency Medical Technician-Paramedic ("EMT-P") Yonnone noted that there was some swelling and "pain to palpitation of [the] area." (*Id.*). EMT-P Yonnone ordered an X-ray to rule out a fracture, gave Plaintiff a brace, and advised him to ice his wrist. (*See id*. at 001-002). The X-ray, taken on June 24, 2014, was negative for a fracture, and revealed "scapholunate interval at upper limits of normal." (*Id*. at 003).[4] This reading "indicates that the measurement of the space crossed by the scapholunate ligament was within the normal range," and Plaintiff "had a wrist sprain." (Bardes Report at 3).

On August 7, 2014, Plaintiff sought follow-up treatment for right wrist pain. (Cowart Decl., Ex. 2 at 004). Plaintiff reported that he was in "constant pain/discomfort" and was taking the prescribed anti-inflammatory medication "with little relief." (*Id.*). Physician Assistant-

---

Plaintiff's Complaint is also filed, under seal, on the docket. (Docket No. 2). Exhibit 2 to the Cowart Declaration are true and correct copies of selected Bureau of Prisons medical records produced during discovery. (Docket Nos. 73-2, 86-2). Defendant also submitted a Declaration from its expert, Dr. Charles L. Bardes. (Docket No. 74). Exhibit A to the Bardes Declaration is Dr. Bardes's expert report in this matter. (Docket No. 74-1) ("Bardes Report").

[4] Defendant's expert, Dr. Bardes, explains that the "scapholunate ligament is a leathery band that connects two bones in the hand, the scaphoid and the lunate bone." (Bardes Report at 3). If the scapholunate ligament "is torn, the space between the two bones increases." (*Id.*). The "gold standard" for diagnosis of a scapholunate ligament tear, "short of invasive surgery," is an MRI. (*Id.*).

Certified ("PA-C") Tarallo advised Plaintiff to "limit strenuous use of wrist until symptoms resolved," and requested an orthopedics consultation. (*Id*. at 006). On September 3, 2014, Dr. Sommer evaluated Plaintiff for "severe wrist pain." (*Id*. at 008). Dr. Sommer prescribed pain medication and ordered an MRI of Plaintiff's wrist. (*Id*. at 009). Plaintiff's MRI was taken on September 30, 2014. (*Id*. at 011). The MRI revealed: (1) a "[s]mall amount of fluid in the distal radial ulnar joint;" (2) a "[s]mall radiocarpal joint effusion;" and (3) "[n]o evidence of scapholunate ligament tear." (*Id*.). Plaintiff continued to complain of right wrist pain during follow-up appointments. (*See id*. at 013-020). On October 1, 2014, Nurse Practitioner (NP) Hyosim noted that Plaintiff's wrist was tender, but did not have swelling, edema, or crepitus. (*Id*. at 017). NP Hyosim also indicated that Plaintiff had not been wearing a wrist brace as directed, and Plaintiff was holding a cane in his right hand when ambulating. (*Id*.). Plaintiff was prescribed pain medication, told to wear a brace for 6 weeks consistently, and referred for an orthopedic examination. (*Id*. at 020). On November 12, 2014, the FCI Otisville Utilization Review Committee deferred approving the orthopedic consult request. (*Id*. at 021).

Plaintiff's pain did not improve, and in early 2015, he was referred for a surgery consultation. (*Id*. at 025). On May 14, 2015, Plaintiff's examination with a surgeon revealed a localized edema, tenderness and stiffness. (*Id*. at 026). An X-ray taken that day showed a "chronic scapholunate ligament tear." (*Id*.). After discussing treatment options, Plaintiff elected to proceed with surgery, *i.e*., carpal bone stabilization, flexor carpi radialis tendon transfer, and wrist denervation. (*Id*.). Following his surgery, on August 20, 2015, Plaintiff reported that his wrist was "doing well." (*Id*. at 028). The doctor removed Plaintiff's stitches, and noted some "near stiff" range of motion and incisional tenderness. (*Id*.). However, Plaintiff's thenar strength and palmar cutaneous nerve were intact, and pin sites were also intact. (*Id*.). On February 4,

2016, the doctor noted that Plaintiff was "[d]oing well," but "still ha[d] some pains with certain movements and motions." (*Id*. at 030). Plaintiff's incisions had healed, and he had good range of motion in his fingers, but a stiff range of motion in his wrist and some "locking triggering [in the] right middle finger." (*Id*.). His thenar strength and palmar cutaneous nerve remained intact. (*Id*.). The doctor instructed Plaintiff to continue at-home exercises for range of motion and to wear a wrist brace in the evening. (*Id*. at 31). The doctor also administered a lidocaine injection in Plaintiff's right trigger finger. (*Id*.). However, on July 7, 2016, an X-ray revealed some degenerative joint disease in the wrist and Plaintiff continued to experience pain. (*Id*. at 033-34). Ultimately, Plaintiff elected to have a second surgery. (*Id*. at 036).[5]

**B. Expert Opinion—Defendant's Expert, Dr. Charles L. Bardes**

Defendant retained Dr. Bardes to conduct an expert review and render an opinion as to whether "Dr. Sommer and the Bureau of Prisons Health Services staff departed from the standard of care in their treatment of" Plaintiff. (Bardes Report at 1). Dr. Bardes is a "board-certified [physician] in Internal Medicine" and is "a Fellow of the American Board of Internal Medicine and the New York Academy of Medicine." (*Id*.). As a Professor of Clinical Medicine at Weill Cornel Medical College, his "duties combine patient care and medical student education." (*Id*.). Accordingly, he is "familiar with the standards of care related to the practice of general internal medicine, including the issues raised in this case." (*Id*.).

After reviewing Plaintiff's medical records, radiology studies, Plaintiff's operative report from Dr. Sodha, the declaration of Adam Johnson,[6] the order granting Plaintiff's IFP application

---

[5] The government represents that the second surgery was performed by "[a]nother orthopedist…after Smith was transferred to another BOP facility." (Def. Mtn. at 4).

[6] Mr. Johnson is a supervisory attorney with the Federal Bureau of Prisons assigned to the Metropolitan Correctional Center in New York, NY. (Docket No. 45). He submitted a declaration in connection with the Individual Defendants' prior motion for summary judgment, attesting to Plaintiff's grievance history, including his

in this case, and the motions for dismissal and summary judgment, Dr. Bardes concluded that Dr. Sommer and the Bureau of Prisons ("BOP") met the applicable standard of care at all times. (*Id*.). Specifically, Dr. Bardes opines that: (i) Plaintiff's June 14, 2014 X-ray indicated that he "had a wrist sprain," because "'[u]pper limit of normal' indicates that the measurement of the space crossed by the scapholunate ligament was within the normal range;" (ii) PA-C Tarallo appropriately evaluated Plaintiff on August 7, 2014 and recommended an orthopedics consultation; (iii) Dr. Sommer appropriately evaluated Plaintiff on September 3, 2014 and ordered an MRI, which "specifically did not show a tear of the scapholunate ligament;" (iv) at follow-up visits, the BOP medical staff ordered several measures to address Plaintiff's symptoms, including medications, icing, and a brace, and Plaintiff "did not consistently wear the brace until urged to do so;" (v) Plaintiff's examination and X-ray "had changed significantly" when he saw an orthopedist "leading Dr. Sodha to diagnos[e] a chronic tear" and offer both surgical and non-surgical treatment options; (vi) after Plaintiff's August 3, 2015 surgery, Dr. Sodha "considered the operation a success." (*Id*. at 3). Dr. Bardes opines that Plaintiff "most likely suffered an addition[al] injury between the time of the initial MRI, when no tear was found, and the orthopedist's [X]-ray, when a tear was diagnosed," and that Plaintiff may have contributed to the worsening of his condition by not wearing a brace as directed. (*Id*. at 3-4). Furthermore, Dr. Bardes states that:

> 5. In view of the normal MRI, the clinical picture was a wrist sprain, for which Mr. Smith was provided with appropriate, conservative treatment—icing, anti-inflammatory medication, analgesia, and avoidance of strenuous activity using the wrist. It does not require urgent consultation with an orthopedic surgeon.

---

administrative requests for medical care and attaching certain medical records and documents maintained by the Bureau of Prisons. (*Id*.).

>    6. At no point did Dr. Sodha state or imply the surgery was urgent, as evidenced by his examination note of May 14, 2015 indicating no urgency and the thirteen week gap between his diagnosis and the operation.

(*Id*. at 4). Accordingly, based on these findings, Dr. Bardes concludes that Dr. Sommer and the BOP medical staff "met the standard of care at all times." (*Id*.).

**C. Procedural Background**

Plaintiff commenced this action on April 16, 2018. (Docket No. 2). Plaintiff alleges that Defendant committed medical malpractice by failing to diagnose and treat his scapholunate ligament tear sooner. (*See id*). Specifically, Plaintiff alleges that: (1) an X-ray taken after his injury was "inconclusive[]" and FCI staff should have resolved the inconclusive findings sooner; (2) the subsequent delayed diagnosis caused a delay in his referral to an orthopedist; (3) the delayed diagnosis caused "complications" with the first surgery, and the need for a second surgery. (*Id*. at 15-19).[7] Plaintiff alleges that, ultimately, these delays caused Plaintiff's surgeries to be unsuccessful, and "degeneration that will [a]ffect the degree [of] disability to the right-wrist." (*Id*. at 18-19).

After Judge Halpern granted the Individual Defendant's motion to dismiss and for summary judgment, (Docket No. 50), the remaining parties consented to this Court's jurisdiction, (Docket No. 58). The Court entered a case management order, by which discovery was to be complete by April 25, 2022. (Docket No. 61). Pursuant to that schedule, Defendant served the expert report of Dr. Bardes on March 25, 2022. (Def. Mtn. at 5). Plaintiff then sought leave to serve interrogatories, to be answered by Dr. Bardes, on Defendant; the Court granted this request and allowed Plaintiff until April 8, 2022 to serve the interrogatories. (*See* Mar. 30, 2022 Minute Entry). Plaintiff sought an extension of that deadline to June 3, 2022, which the Court granted,

---

[7] Page numbers refer to the numbers generated by the ECF system.

and the Court further extended the deadline to complete all discovery accordingly to July 25, 2022. (*See* May 27, 2022 Minute Entry).  Plaintiff served his interrogatories, and Defendant replied on July 5, 2022. (Cowart Decl. ¶ 6).  Plaintiff did not serve an expert report on Defendant. (*Id*. ¶ 7).

The Court then set a summary judgment schedule. (*See* Sept. 8, 2022 Minute Entry).  Under that schedule, Defendant's brief was due on October 7, 2022, Plaintiff's response was due on November 18, 2022, and Defendant's reply was due on December 5, 2022. (*Id*.).  Defendant filed its Motion on October 7, 2022. (Docket No. 71).  The Motion included the required notice to *pro se* litigants opposing a motion for summary judgment, explaining the possible effect of a motion for summary judgment on Plaintiff's claims and highlighting Rule 56 and Local Civil Rule 56.1. (Docket No. 76).  The notice warned Plaintiff that a failure to respond could result in the Court accepting Defendant's facts as true and dismissing Plaintiff's complaint without a trial. (*Id.*).  The notice further advised that, according to Rule 56, Plaintiff "must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts" in support of his claim. (*Id.*).  While Plaintiff received a copy of Defendant's motion materials, (*see* Docket Nos. 77, 87), he did not file a response.  The Court granted several extensions for Plaintiff to file his opposition—first to December 9, 2022, (Docket No. 78), then to February 28, 2023, (Docket No. 80), and finally to April 14, 2023, (Docket No. 82).  In its Order granting the extension to April 14, 2023, the Court noted that "This is Plaintiff's third request for an extension of time.  Plaintiff has had over 100 days to file his opposition.  This is the last extension of time that will be granted." (*Id.*).  These Orders were all mailed to Plaintiff at his address of record, (*see* Nov. 9, 2022, Dec. 20, 2022, and Feb. 28, 2023 Docket Entries), and there is no indication that he did not receive them.  On May 2, 2023, over

two weeks after Plaintiff's opposition was due, the Court deemed this Motion fully submitted. (May 2, 2023 Memo Endorsement). The May 2, 2023 Order was also sent to Plaintiff at his address of record, (May 2, 2023 Docket Entry), and there is no indication that he did not receive it. Moreover, Defendant's Rule 56 notice adequately apprised Plaintiff of the consequences of failing to respond to Defendant's motion for summary judgment.[8] *See Johnson v. Reed*, No. 17 Civ. 8620 (NSR), 2023 WL 1868399, at *1 n.1 (S.D.N.Y. Feb. 8, 2023).[9]

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "'A fact is material if it might affect the outcome of the suit under the governing law.'" *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583 (LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (quoting *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 50 (2d Cir. 2009)).

---

[8] "In the Second Circuit, a district court cannot grant a motion for summary judgment in a case involving a *pro se* litigant unless (1) the court apprises the *pro se* litigant of the consequences of failing to respond to the motion, (2) an opposing party has already provided the *pro se* litigant with the requisite notice, or (3) it is clear that the *pro se* litigant understands the nature and consequences of summary judgment." *Johnson*, 2023 WL 1868399, at *1 n.1 (citations and internal quotations omitted). Here, the Court and Defendant adequately apprised the *pro se* Plaintiff of the consequences of failing to respond to Defendant's motion.

[9] If Plaintiff does not have access to cases cited herein that are available only by electronic database, then he may request copies from Defendant's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the pro se litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.").

In reviewing a motion for summary judgment, the Court should only consider "evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.* 164 F.3d 736, 746 (2d Cir. 1998). In addition, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial ...." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id*. "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id*. (quoting *Celotex*, 477 U.S. at 324), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (noting that a nonmoving party on summary judgment "'may not rely on conclusory allegations or unsubstantiated speculation'") (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Further, if the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Parties moving for and opposing summary judgment in the Southern District of New York must also submit short and concise statements of facts, supported by evidence that would be

admissible at trial. Local Civ. R. 56.1. The opposing party must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y.*, 584 F.3d at 418 ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). However, uncontested facts cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement; the Court is free to disregard the assertion in the absence of citations or where the cited materials do not support the factual assertions in the statements. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). The Court therefore has discretion "to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." *Id.* (quoting *Monahan v. N.Y.C. Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)); *see also* Fed. R. Civ. P. 56(c)(3). Nevertheless, the Court is "not required to consider what the parties fail to point out." *Monahan*, 214 F.3d at 292 (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978)). Additionally, when Defendants seek summary judgment against a *pro se* litigant, the Court must afford "special solicitude" to the non-movant. *See, e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir.1994) (holding district court "should have afforded [*pro se* litigants] special solicitude before granting [a] motion for summary judgment").

### III. DISCUSSION

Defendant argues that Plaintiff's medical malpractice claim should be dismissed on summary judgment because he has failed to present the requisite expert testimony and, in any

event, the government's unrebutted expert testimony establishes that Defendant met the applicable standard of care. (Def. Mtn. at 7-10).[10] The Court agrees.

The FTCA provides that the government's liability shall be determined based on "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  Thus, New York law governs Plaintiff's medical malpractice claim. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("Because the acts or omissions at issue in this case…both occurred in New York, New York law applies to [the plaintiff's] claims under the FTCA.").  "In order to prove a medical malpractice claim in New York, Plaintiff must establish '(1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries.'" *Moore v. Shahine*, 18 Civ. 463 (AT) (KNF), 2021 WL 827694, at *4 (S.D.N.Y. March 4, 2021), *aff'd*, No. 21-711, 2022 WL 2118945 (2d Cir. June 13, 2022) (quoting *Vale v. United States*, 673 F. App'x 114, 116 (2d Cir. 2016)).  If a defendant accused of medical malpractice demonstrates that he "'did not depart from good and accepted medical practice or that any departure did not proximately cause plaintiff's injuries'" than he is *prima facie* entitled to summary judgment. *Id*. (quoting *Ongley v. St. Lukes Roosevelt Hosp. Ctr*., 725 F. App'x 44, 46 (2d Cir. 2018)).

To overcome this *prima facie* entitlement to summary judgment, Plaintiff must present "'expert testimony that there was a deviation from accepted standards of medical care and that such deviation was the proximate cause of the injury.'" *Moore*, 2022 WL 2118945, at *1 (quoting *Hytko v. Hennessey*, 879 N.Y.S.2d 595, 598 (3d Dep't 2009)); *see also Sitts v. United*

---

[10] In support of its contention that Defendant adhered to the applicable standard of care, Defendant submitted the expert report of Dr. Bardes.  Upon review, the Court finds that Dr. Bardes is a qualified expert, and that his expert opinions are admissible under Federal Rule of Evidence 702. *See Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 180 (E.D.N.Y. 2001) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66–67 (2d Cir. 1997)) ("Evidence contained in an expert's report therefore must be evaluated under Fed. R. Evid. 702 before it is considered in a ruling on the merits of a summary judgment motion.").  Accordingly, the Court will consider Dr. Bardes's opinions when ruling on the merits of Defendant's Motion.

*States*, 811 F.2d 736, 739-40 (2d Cir. 1987) (noting that, except in rare cases, such as "where an unexplained injury has occurred to a part of the body remote from the site of the surgery," New York plaintiffs are required to introduce expert testimony to establish a *prima facie* claim of medical malpractice); *Potter v. United States*, 17-cv-4141 (AJN), 2020 WL 2836440, at *4 (S.D.N.Y. May 30, 2020) ("[T]his is not the 'rare' medical malpractice action in which expert testimony is unnecessary to establish the elements of Plaintiff's claim, and Plaintiff does not argue that it is."). Here, Defendant correctly argues that Plaintiff's case does not constitute a "rare" case of medical malpractice that "falls within the competence of a lay jury to evaluate" without the need for expert testimony. *Nabe v. United States*, No. 10-CV-3232 (NGG) (VPP), 2014 WL 4678249, at *8 (E.D.N.Y. Sept. 19, 2014) (quoting *Sitts*, 811 F.3d at 739). For example, this is not a case where "a dentist has pulled the wrong tooth,… an unexplained injury has occurred to a part of the body remote from the site of the surgery,… the surgeon saws off the wrong leg,…[or] the surgeon left a needle inside the patient's body." *Sitts*, 811 F.3d at 740 (citations and quotations omitted). Indeed, Plaintiff's injury required treatment over the course of several months with multiple medical professionals and diagnostic imaging. Accordingly, by failing to submit an expert report in support of his position, Plaintiff has failed to overcome Defendant's *prima facie* entitlement to summary judgment. *See*, *e.g.*, *Potter*, 2020 WL 2836440, at *3 ("'If a plaintiff cannot establish a prima facie case without the benefit of expert testimony, and the plaintiff is unable to procure such testimony, then summary judgment is appropriate.'") (quoting *Zeak v. United States*, No. 11 Civ. 4253 (KPF), 2014 WL 5324319, at *11 (S.D.N.Y. Oct. 20, 2014)).

  Even assuming, *arguendo*, that Plaintiff's failure to present expert testimony did not entitle Defendant to summary judgment on the FTCA claim, the Court also determines that

Plaintiff's claims that Defendant breached a duty of care are not supported by the record.  Dr. Bardes's unrebutted expert opinion affirms that the treatment of the BOP's medical staff met the applicable standard of care. (*See* Bardes Report).  Specifically, Dr. Bardes opines that, upon initial presentation, EMT-P Yonnone appropriately evaluated Plaintiff and ordered an X-ray, which showed that "the scapholunate ligament was within the normal range"—consistent with a wrist sprain. (*Id*. at 3).  Moreover, PA-C Tarallo appropriately ordered an MRI when Plaintiff followed up regarding his wrist pain. (*Id*.).  Dr. Bardes opines that the "gold standard for diagnosis [of a ligament tear], short of surgery, is MRI," and that the September 2014 MRI "specifically did not show a tear of the scapholunate ligament." (*Id*.).  Additionally, Dr. Bardes notes that Plaintiff received "several measures," including medication and a brace, "to address [his] symptoms," and that Plaintiff's failure to wear a brace as instructed likely contributed to the worsening of his condition. (*Id*. at 3-4).  Thus, "[i]n view of the normal MRI, the clinical picture was a wrist sprain, for which [Plaintiff] was treated with appropriate, conservative treatment…[and] d[id] not require an urgent consultation with an orthopedic surgeon," as evidenced by Dr. Sodha's examination notes. (*Id*. at 4).  Thus, Dr. Bardes's report rebuts Plaintiff's allegations that Defendant's treatment deviated from the applicable standard of care, and that such deviation proximately caused the worsening of his injury.  Moreover, Plaintiff fails to offer any expert testimony to refute Dr. Bardes's conclusions.  Accordingly, Defendant is entitled to summary judgment on the medical malpractice claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. The Clerk of the Court is respectfully requested to terminate the pending motion (Docket No. 71), to enter judgment for Defendant, and to mail a copy of this Opinion and Order to the *pro se* Plaintiff.

Dated: August 10, 2023
       White Plains, New York

**SO ORDERED:**

*[signature]*
JUDITH C. McCARTHY
United States Magistrate Judge